IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

PATRICK ROMES/IBRAHIM HAKIM X                                    PLAINTIFF
ADC #114867

v.                          5:19-cv-00283-BSM-JJV

WILLIAM STRAUGHN, *et al*.                                       DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen days from the date of the findings and recommendations. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

**I.    INTRODUCTION**

Patrick Romes/Ibrahim Hakim X ("Plaintiff"), in custody at the Cummins Unit of the Arkansas Department of Correction ("ADC"), is proceeding *pro se* in this 42 U.S.C. § 1983

action. (Doc. No. 2.) He sued multiple Arkansas Department of Correction officials in their personal and official capacities alleging excessive force, deliberate indifference, and due process violations. (*Id.*) He also made an access to the courts claim. (*Id*. at 12.) All of Plaintiff's claims have been dismissed except for his personal-capacity excessive force claims against Defendants Spratt, West, Gardner, Suber, and Taylor. (Doc. Nos. 33, 59, and 95).

Defendants Spratt, West, Gardner, Suber, and Taylor (collectively "Defendants") have filed a Motion for Summary Judgment. (Doc. Nos. 124-126.) Plaintiff has responded (Doc. No. 127) and Defendants have replied. (Doc. No. 128). This matter is ripe for a decision. After careful consideration, I recommend Defendants' Motion be granted and Plaintiff's claims dismissed without prejudice.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by

sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  ANALYSIS

Plaintiff, a prisoner in the ADC, alleges Defendants used excessive force against him. Specifically, he claims Defendant Spratt grabbed his right hand and Defendant West tackled him. (Doc. No. 2 at 5-6.) Plaintiff further asserts Defendant West called in a Code 3, falsely reporting an assault on an officer. (*Id.* at 5.) Defendants West, Taylor, Suber, and Gardner purportedly used excessive force and rammed Plaintiff's head into a wall. (*Id.* at 11.)

#### A. Excessive Force

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). The core judicial inquiry in an excessive force claim is whether the force was used in a "good faith effort to maintain or restore discipline, or was instead used maliciously and sadistically to cause harm." *Flemons v. Devane*, 779 Fed. Appx. 423, 425 (8th Cir. 2019) (per curiam) (*citing Wilkins v. Gaddy*, 559 U.S. 34, 36-39 (2010)). In making this inquiry, courts consider: "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted . . . ." *Jackson*, 866 F.3d at 974. Pain inflicted during a prison security measure is not cruel and unusual punishment

3

only because in hindsight the degree of force used for security purposes was unreasonable. *Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) (*quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Rather, guards will be liable only "if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically.'" *Id.* (internal citation omitted). "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in the light of the particular circumstances." *Story v. Norwood*, 659 F.3d 680, 686 (8th Cir. 2011) (*quoting Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

### B. Qualified Immunity

Defendants contend they are entitled to qualified immunity on Plaintiff's personal capacity claims against them. (Doc. No. 125 at 21.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*,

533 U.S. 194, 201 (2001).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236).  Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative.  *Id*.

### C. Facts Alleged

Defendants assert the following undisputed facts.  Plaintiff is an inmate at the Cummins Unit of the Arkansas Division of Correct.  (Doc. No. 126 at 1.)  As a pastime, Plaintiff participates in illegal sports betting.  (Doc. No. 126 at 1; Doc. No. 124-1 at 52:15-54:16.)  Inmates involved in gambling pick up messages from other inmates in order to place bets.  (Doc. No. 126 at 2; Doc. No. 121-4 at 35:14-37:4.)  On May 11, 2019, Plaintiff worked as a barrack porter for the 6A barracks, which gave him the chance to move around the prison.  (Doc. No. 126 at 2; Doc. No. 124:1 at 29:23-30:2; 32:19-33:3).  At around 7:25 a.m. that day, Plaintiff was passing through the hallway of 7A Barracks.  (Doc. No. 126 at 3; Doc. No. 124-1 at 32:19-33:12).  Only Defendants Spratt and West were in the hallway at the time.  (Doc. No. 126 at 3; Doc. No. 124-1 at 34:2-15.)  As Plaintiff passed the door of 7A Barracks, he picked up a piece of paper another inmate slid to him.  (Doc. No. 126 at 3; Doc. No. 124-2 at 7:24:11-17.)  Plaintiff maintains the paper contained gambling-related information.  (Doc. No. 124-1 at 36:4-37:1.)

Defendants Spratt and West saw Plaintiff pick up the paper.  (Doc. No. 126 at 4.)  Defendant Spratt approached Plaintiff and asked him what he picked up; Plaintiff concedes the item he picked up was contraband.  (Doc. No. 126 at 4-5; Doc. No. 124-1 at 55:23-56:1, 49:10-22.)  Plaintiff agrees that, unless he showed the officers what he picked up, they could not have

5

known exactly what was in Plaintiff's hand. (Doc. No. 126-4 at 5; Doc. No. 124-1 at 56:18-57:13.)

Defendant Spratt repeatedly told Plaintiff to turn over the contraband, but Plaintiff refused. (Doc. No. 126 at 5; Doc. No. 124-1 at 43:4-10.) Plaintiff tried to walk away from Defendant Spratt, but she grabbed his right hand to stop him from leaving the area. (Doc. No. 126 at 6; Doc. No. 124-1 at 40:11-18.) Shortly after, Defendant West approached Defendant Spratt to provide assistance, if needed. (Doc. No. 124-1 at 77:2-11; Doc. No. 124-2 at 7:25:23-40.) Plaintiff continued to refuse to surrender the contraband, and tried to jerk away from Defendant Spratt's grip. (Doc. No. 124-1 at 49:15-50:2; 56:12-17; Doc. No. 124-2 at 7:24:44). Defendant Spratt then radioed for assistance. Defendants Spratt and West maneuvered Plaintiff away from the center of the hallway towards a corner. (Doc. No. 124-1 at 83:15-84:1; Doc. No. 124-2 at 7:25:50-7:26:04.) Plaintiff still would not surrender the contraband. (Doc. No. 124-1 at 43:11-44:11; Doc. No. 124-2 at 7:26:04-15.) Instead, he put the contraband in his mouth in an effort to conceal it. (Doc. No. 124-1 at 43:11-44:11; 71:17-72:18.)

As a result of Defendant Spratt's struggle with Plaintiff, other officers responded to offer assistance. (Doc. No. 124-2 at 7:26:20.) The responding officers—Defendants West, Gardner, Suber, and Taylor—grabbed Plaintiff and tried to force him to the ground. (Doc. No. 124-2 at 7:26:15-23; Doc. No. 124-1 at 88:12-89:9.) No chemical spray, Taser, or physical blow was used to subdue Plaintiff. (Doc. No. 124-2 at 7:26:22-23; Doc. No. 124-1 at 94:2-12.) During the scuffle, several officers lost their footing and fell to the ground near the end of the hallway together with Plaintiff. (Doc. No. 124-1 at 91:7-16; Doc. No. 124-2 at 7:26:22-23.) Plaintiff claims that when he fell, he hit is head on the wall and lost consciousness. (Doc. No. 124-1 at

6

105:9-3, 113:13-15.) An internal affairs investigation determined the force used was reasonable. (Doc. No. 124-9.)

Plaintiff was taken to the infirmary where he gained consciousness. (Doc. No. 124-10.) Medical records show that Plaintiff suffered no wounds, bruises, or abrasions. (*Id*.) Plaintiff was released without further medical treatment. (*Id*.) He needed no further medical care. (*Id*.)

Plaintiff finally surrendered the contraband, but it was too wet to decipher what had been written on it. (Doc. No. 124-1 at 73:15-22.) He was found guilty of failing to obey orders and of the purchase or exchange of unauthorized articles. (Doc. No. 124-12.)

In his Response to Defendants' Motion, Plaintiff maintains Defendant West walked from 8B Barracks door and tackled Plaintiff against the wall, which surprised Defendant Spratt and caused her to jump back. (Doc. No. 127 at 2.) He further maintains Defendant West "was trying to aggressively slam plaintiff on the floor by herself" and falsely reported a Code 3, assault on an officer. (*Id*.) Plaintiff states that once the officers responding to the Code 3 arrived, Defendant Suber grabbed his neck in a forceful manner from behind, which Defendants West, Gardner, and Taylor tugged on his body, "result[ing] in Plaintiff's head being rammed into the wall in front of 8A Barracks and Plaintiff left unconscious on the floor." (*Id*.) Plaintiff also makes statements about his medical care (*Id*.at 3), but medical care is not at issue here.

Plaintiff asserts there are several disputed facts: (1) Plaintiff was found not guilty of certain violations, and his conviction of some violations were reversed, which made Defendants' actions excessive; (2) Plaintiff maintains he has the right "to stay informed on upcoming sporting events, including 'Today's Odds' that is published" in the newspaper; and (3) Plaintiff never received a gambling-related violation. (*Id*. at 5-8.) I find that, even if there is a dispute in connection with these issues, the issues do not determine the outcome of Plaintiff's excessive

force claim. Whether force used was excessive turns on whether the force used was reasonable. The issues above do not answer that question.

Plaintiff also contends that video of the incident shows Defendant West "tackling plaintiff for frivolous reasons and due to the false Code 3 being called," while Defendant Suber grabbed Plaintiff's neck from behind and Defendants West, Gardner, and Taylor "tugged and pulled on Plaintiff's body and as the commotion momentum begin to shift across the hallway Defendant Spratt stepped back and Defendant Suber released her grip . . . just before Plaintiff's head is rammed into the wall." (*Id*. at 7.) Even taking this as true, there is no genuine issue of material fact that would preclude summary judgment in Defendants' favor.

### D. No Genuine Issue of Material Fact

At summary judgment, Plaintiff must support his allegations with evidence creating a genuine issue of material fact. *Wilson v. Smith*, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Here, Plaintiff's allegations of excessive force are not supported by his deposition testimony or by the video that captured the incident.

At his deposition, Plaintiff testified that he had a piece of paper clenched in his right hand. (Doc. No. 124-1 at 76:16-18.) Defendant Spratt had not seen what was on the paper. (*Id*. at 57:18-25, 84:2-6.) Defendant Spratt told Plaintiff to give her the paper; when Plaintiff did not do so, Defendant Spratt grabbed Plaintiff's right hand to get the paper out of it. (*Id*. at 63:15-64:22; 76:8-15). Plaintiff refused to give it to her. (*Id*. at 84:2-6.) Plaintiff testified that he would have given the paper to Defendant Spratt if she had asked for it, but Defendant Spratt tried to snatch the paper. (*See Id*. 84:19-25.) Plaintiff explained at his deposition: "[d]on't try to snatch nothing

8

from me. When you try to snatch something from me, don't – don't snatch. If you try to snatch it, I'm going to clench my fist. (*Id*. at 84:19-25.) Plaintiff also testified that the only force Defendant Spratt used against him was grabbing his wrist, and in doing so she did not intend harm. (Doc. No. 124-1. at 61:16-62:5; 94:24-96:20.)

Defendant West had been standing across the hall. (*Id*. at 69:9-16.) Plaintiff had a spray bottle in his left hand and "went to put the spray bottle on [his] – on [his] pants pocket." (*Id*. at 26:8-24.) At that point Defendant West "came from across the hall, saying 'He's trying to grab something,' and called a Code 3." (*Id*. at 26:16-24.) Plaintiff said Defendant West then tackled him. (*Id*. at 81:5-9.) Defendant West "was trying to slam [Plaintiff] when she grabbed [him]. She tried to grab [him] by the waist and slam [him] to the ground." (*Id*. at 89:14-19.) Defendant West could not take Plaintiff to the ground because she could not pick Plaintiff up. (Doc. No. 124-1 at 89:20-90:9.) The video of the incident reflects that Plaintiff did not go to the ground voluntarily while only Defendant West and Spratt were near.

The video depicts Defendant Spratt talking with Plaintiff for some time before she tried to get the paper out of Plaintiff's right hand. As Defendant Spratt tried to take the paper from Plaintiff's hand, the two moved towards a corner to the left of the hallway, with Defendant West following. (Doc. No. 124-2 at 7:25:44.) Defendant Spratt at some point stepped back and Defendant West is seen closest to Plaintiff. (*Id*. at 26:09-16.) Another Defendant can be seen running to the area from the back. (*Id*.) While the view is somewhat blocked by Defendant Spratt, it is visible that Defendant West had grabbed Plaintiff around the same time the responding Defendant arrived in the corner. If this responding Defendant had a grip on Plaintiff, it was not for more than a couple of seconds. (*Id*. at 7:26:17-20.) Defendants West and Spratt appear to

touch Plaintiff's upper body; Plaintiff is bent at the waist at a 90 degree angle. (*Id*. at 7:26:19.) Plaintiff's head is pointed at the direction of the wall on the other side of the hallway. (*Id*.)

At this point, the other two responding Defendants are running towards Plaintiff. (Doc. No. 124-2 at 7:26:19) They came in response to the Code 3. (Doc. No. 124:1 at 90:25-91:6.) Plaintiff testified that "[t]hey were trying to take [him] down, because that's what they said 'Take him to the ground.'" (*Id*. at 86:9-10.) Plaintiff agreed that at the time the additional officers arrived all they knew is that they were responding to a call about an assault on an officer. (*Id*. at 86:11-87:13.)

The video Plaintiff was still near the corner when the second responding Defendant arrived. (Doc. No. 124-2 at 7:26:20.) When the third responding Defendant arrived around one second later, Plaintiff and the other Defendants were near the middle of the hallway. (*Id*. at 7:26:21.) Plaintiff remained bent at the waist. Plaintiff testified that Defendants Taylor and Gardner were pulling him. (Doc. No. 124-1 at 111:1-4.) He also testified Defendant Suber had grabbed his neck. (*Id*. at 105:20-23.) The video reflects that for the next two seconds, the mass bodies traveled across the hallway ending when they reached the wall on the other side where Plaintiff hit his head. (Doc. No. 124-2 at 7:26:23) The video shows that some Defendants also fell to the ground. (*Id*. at 7:26:23.) As Plaintiff explained at his deposition,

> Plaintiff: But by that time, the force of them or the momentum or the force of the altercation of – of all of them trying to pull and pull on me went out there. So when you've got one individual and you've got three, four other individuals around them, pushing and pulling on them, the momentum of the force, and [Defendant West] – her – she would've had her arms wrapped around me.
>
> Question: Okay. So –
>
> Plaintiff: The momentum of her force, the momentum of the other officers' force.

10

> Question: So the momentum of – of – caused by the other officers attempting to take you to the ground –
>
> Plaintiff: Responding officers.

(Doc. No. 124-1 at 106:7-18.)

Plaintiff's testimony characterizing the force as "momentum" is consistent with the depiction of the incident captured on video.

Considering the evidence in Plaintiff's favor, and taking into account all circumstances, I cannot find any Defendant used excessive force. Plaintiff admitted that he was in possession of contraband he would not turn over to Defendant Spratt because she tried to snatch it from him. Plaintiff also explained that Defendant West made a Code 3 alert at the same time Defendant West approached Plaintiff and he had a chemical bottle. Plaintiff testified Defendants intended to bring him to the ground. Defendant West could not lift Plaintiff and thus could not bring him down. But Plaintiff apparently did not go to the ground voluntarily either. Once the responding Defendants got involved, Plaintiff testified—and the video depicts—that it was their momentum that carried the pack toward the wall where Plaintiff hit his head. I note that no Defendant struck Plaintiff and no chemical agent was used.

Plaintiff has not established a genuine issue of material fact that prevents entry of summary judgment in Defendants' favor. I find that no Defendant used excessive force. Further, even if one or more Defendants did violate Plaintiff's rights, Defendants are entitled to qualified immunity based on the circumstances particular to this case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Accordingly, I recommend summary judgment be granted in Defendants' favor and that Plaintiff's claims be dismissed.

11

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 124) be GRANTED.

2. Plaintiff's claims against Defendants Spratt, West, Suber, Gardner, and Taylor be DISMISSED with prejudice.

3. This case be DISMISSED.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 13th day of January 2021.

                                                                                    _____
                                                                                    JOE J. VOLPE
                                                                                    UNITED STATES MAGISTRSTE JUDGE